460 A.2d 778

**COMMONWEALTH of Pennsylvania**

v.

**Frank J. MILEY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 3, 1982.

Filed April 29, 1983.

Petition for Allowance of Appeal Denied Dec. 19, 1983.

Warren R. Hamilton, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, CIRILLO and JOHNSON, JJ.

HESTER, Judge:

Appellant, Frank J. Miley, was charged on March 17, 1980 with possession with intent to deliver a controlled substance; manufacturing and possessing with intent to manufacture or deliver a controlled substance; and, intentionally possessing a controlled substance. He was found guilty of all charges following a non-jury trial in the Court of Common Pleas of Philadelphia County, Pennsylvania, and sentenced to a total term of imprisonment of not less than three (3) nor more than ten (10) years in a State Correctional Institution.

On March 17, 1980, Officer Raymond Stackhouse of the Philadelphia Police Department, received a telephone call from a confidential informant identifying appellant as the processor and seller of methamphetamine in a three story row house at 3831 Haverford Avenue, Philadelphia. Furthermore, the informant described appellant as a Negro male, age 45, 6 feet tall, the owner and operator of a blue and white 1975 Buick Electra and the frequent adorner of cowboy boots and cowboy hat. Finally, he informed Officer Stackhouse that appellant planned to move his methamphetamine lab that day, March 17, 1980.

Before securing a search warrant, Officers Stackhouse and Dougherty, in plain-clothed attire, surveyed the row house from inside their parked, unmarked vehicle. Appellant was observed leaving the house; however, upon detecting the surveillance vehicle, his suspicions were apparently aroused and he retreated to the inside of the house. When appellant poked his head outside the front door a short while later, the officers approached him.

Both officers ascended the three steps leading directly from the sidewalk, running parallel to the street, to the threshold of appellant's row house. The exterior front door was open; consequently, the officers unobstrusively stepped into the hallway vestibule to shelter themselves from the rain and converse with appellant. The methamphetamine odor was detected at that point.[1]

The officers informed appellant that they planned to secure the residence and obtain a search warrant. They entered the first floor apartment from the interior doorway leading from the vestibule. Once inside, Officer Stackhouse called his supervisor, Lieutenant John Wilson, who, upon arrival, instructed Officer Stackhouse to obtain a search

1. At the suppression hearing, Officer Stackhouse testified that the odor was detected on the top step outside the exterior front door. N.T. January 20, 1981, p. 13. An issuing magistrate may not consider evidence outside the four corners of the affidavit [Pa.R.Crim.P. 2003(a)]; certainly, an attempt to supplement the affidavit at a suppression hearing must be denied.

and seizure warrant for appellant's premises. Officer Stackhouse departed to do so.

Three other officers arrived to join Lieutenant Wilson and Officer Dougherty in securing the premises. Officer Stackhouse did not return with the search warrant for two and one-half hours; nevertheless, in the meantime, the officers at the scene obtained a key to a door at the end of the vestibule hallway leading to the second and third floors and discovered the chemicals, filters, flasks, tinfoil, bottles, face masks, scales, tubes, alcohol and other accessories used in processing methamphetamine. This paraphernalia was removed following Stackhouse's arrival with the search warrant.

Following his conviction of the aforementioned crimes, appellant's motions for a new trial and arrest of judgment were denied. This appeal is taken from the judgment of sentence.

Appellant first alleges that no probable cause existed for the issuance of the search warrant. He avers that the issuing magistrate had no knowledge of how the informant acquired his information of appellant's alleged illicit activity. Furthermore, according to appellant, Officer Stackhouse's detection of the methamphetamine odor was not an element of probable cause, because it was made following an unlawful intrusion into appellant's house. We disagree.

The United States Supreme Court, in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), promulgated a two-pronged test for determining the constitutionality of a search warrant issued on grounds supplied by a confidential informant. Prior to defining and applying the test, however, the *Aguilar* court first noted that a magistrate's finding of probable cause for a search warrant requires evidence of a less persuasive character than that upholding a police officer's independent, and less impartial, determination of probable cause. Judicial determination of probable cause simply merits more deference from the reviewing court. Where the search warrant affidavit contains allegations not within the affiant-police officer's per-

sonal knowledge, the two-pronged test becomes operative. A magistrate's finding of probable cause will not stand unless he is "informed of (1) some underlying circumstances from which the informant concluded that the narcotics were where he claimed they were [; and, (2)] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was credible or his information reliable." Id. at 378 U.S. 114 and 115, 84 S.Ct. at 1514. The issuing authority here, then, should have been apprised of the informant's basis for concluding that appellant possessed and processed methamphetamine, and of Officer Stackhouse's reasons for believing the informant to be credible and reliable. See *Commonwealth v. Mazzochetti*, 299 Pa.Super. 447, 445 A.2d 1214 (1982); *Commonwealth v. Prokopchak*, 279 Pa.Super. 284, 420 A.2d 1335 (1980); *Commonwealth v. Kaschik*, 235 Pa.Super. 388, 344 A.2d 519 (1975).

■ Since the search warrant affidavit contained no information detailing the method by which the confidential informant learned of appellant's drug processing or plans to move his lab, the first prong of the *Aguilar* test was satisfied only if the tip described appellant's criminal activity in sufficient detail to indicate that it emanated from something more than mere rumor or appellant's reputation. *Commonwealth v. Salvaggio*, 307 Pa.Super. 385, 453 A.2d 637 (1982); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). During cross examination at the suppression hearing, Officer Stackhouse, the affiant, responded to defense counsel's inquiries as follows:

Q. Do you know how the informant came to the conclusion that Frank Miley was manufacturing this methamphetamine?

A. Did I come to the conclusion as to how he knew this information?

Q. Yes.

A. No.

Q. Did he tell you?

A. I don't recall if he stated exactly how he knew this information.

N.T., July 20, 1981, p. 31.

This portion of the suppression hearing quite unequivocally reveals that the issuing authority did not know how the informant came to know the appellant's illicit acts; therefore, we look to the affidavit for the actual tip itself. It reads accordingly:

On Monday, 3-17-80, the assigned, did receive information from an informant who, in the past six months, has given this officer information that has resulted in three arrests with narcotics being confiscated on all three occasions.

This informant did call me at approximately 11:00 a.m. on March 17, 1980, and did state that a male known to him as Frank Miley, approximately 45 years, Negro male, who lived at 3831 Haverford Avenue was selling and processing methamphetamine from his residence located at 3831 Haverford Avenue. He also stated that Frank had been making meth all weekend and was planning to move his lab on Monday, along with all of the meth he had been making. He then described to me the subject of the warrant as being approximately six feet tall with a beard and frequently wore a cowboy hat and the cowboy boots and that he drove a 1975 Buick Electra, white top with dark blue body and the tag being AGU839.

Officer Stackhouse testified at the suppression hearing that the description of appellant's appearance and the identification of his residence and vehicle were precise and accurate; nevertheless, we do not believe that portion of the affidavit to be necessarily indicative of criminal activity. Descriptions of appellant's physical appearance, residence and motor vehicle could have been gleaned from non-implicative occurrences at the workplace and myriad social gatherings. Moreover, the statement that appellant processed methamphetamine the entire previous weekend and planned to move his laboratory on March 17, 1980 does not provide the sufficient detail required by *Spinelli,* supra, and *Salvaggio,*

supra. The *Salvaggio* informant disclosed his frequent purchase of cocaine and marijuana from the defendant. The informant here was a known methamphetamine consumer; however, it was not known whether appellant was his supplier or whether he had ever seen appellant's methamphetamine laboratory.

■ We agree, therefore, with appellant to the extent that the affidavit neither disclosed the informant's source of his information nor sufficiently described appellant's criminal activity, but this accord does not end our review of the first prong of the *Aguilar* test. Where an informant's report does not establish probable cause, but is corroborated by independent observation, the issuance of a search warrant becomes constitutionally justified. *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974); *Commonwealth v. Norwood*, 456 Pa. 330, 319 A.2d 908 (1974); *United States v. Acarino*, 408 F.2d 512 (2d Cir.1969), cert. den., 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969).

Here, Officers Stackhouse and Dougherty conducted an independent surveillance of appellant's house at 3831 Haverford Avenue during the late morning hours of March 17, 1980. They observed the Buick Electra, bearing the precise color combination and license plate number disclosed by the informant, parked immediately in front of appellant's house. Eventually, a middle-aged, Negro male, 6 feet tall, sporting a beard and donning cowboy boots and hat exited the house; however, upon eye contact with the officers, he hastily returned inside. Shortly thereafter, the officers approached the exterior doorway and stepped into the vestibule where Officer Stackhouse immediately diagnosed the methamphetamine odor. An account of this independent surveillance was disclosed in the search warrant affidavit.

■ Prior to the arrest of March 17, 1980, Officer Stackhouse had been assigned to the Narcotics Unit for six and one-half years and had confiscated methamphetamine pursuant to arrests or investigations on over two hundred occasions. Moreover, he had seen clandestine methamphetamine laboratories, similar to that found inside appellant's

house, on four or five occasions prior to the arrest date. Clearly, there was convincing evidence of Stackhouse's ability to accurately detect methamphetamine through his sense of smell. We conclude that the independent observations made subsequent to the informant's telephone call, but before the preparation of a search warrant affidavit, authenticated and expanded the informant's information. The officer's own actions and discovery provided enough information for the issuing authority to find an underlying basis for the informant's tip; hence, the first prong of the *Aguilar* test was satisfied. Additionally, the detection of the methamphetamine odor was not made following an unlawful intrusion into appellant's house. It was made while the officers stood inside a common passageway with a closed door along the left vestibule wall leading to the first floor apartment, and a closed door at the far end of the vestibule leading to the second and third floor apartments.

We need not consider the second prong, i.e., the basis for finding appellant reliable and credible, since appellant does not challenge it here. We state only that appellant would have fruitlessly pursued such a claim anyway; the informant was the source of previous state's evidence leading to three separate arrests.

 Secondly, appellant contends that his warrantless arrest was not based on probable cause. Where an accused is detained without an arrest warrant by an officer's brawn, weapon or display of authority, Fourth Amendment safeguards become acute. *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), cert. den., 454 U.S. 883, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), reh. den., 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980). Our own Supreme Court in *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), cert. den., 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), reviewed whether a warrantless arrest in an accused's home is violative of the Fourth Amendment search and seizure clause. In recognition of the opinions of our various federal circuit

courts, the *Williams* court held that an arrest warrant is a prerequisite to a valid arrest inside the accused's home, unless exigent circumstances dictate otherwise. In determining whether exigent circumstances exist in any given factual situation, the following factors are useful: 1) the gravity of the offense involved; 2) the reasonable belief that the suspect is armed; 3) reasonably trustworthy information that the suspect committed the crime involved; 4) strong reason to believe that the suspect is on the premises; 5) likelihood that the suspect will escape if not quickly apprehended; and, 6) peaceable entry. *Williams,* supra, quoting, *Dorman v. United States,* 140 App.D.C. 313, 435 F.2d 385 (1970).

■ The application of these factors weighs in favor of finding the warrantless arrest constitutional. Admittedly, the likelihood that appellant was armed does not justify a warrantless arrest. No testimony was elicited demonstrating the officers' suspicions that appellant carried a weapon. On the other hand, the gravity of the offense was severe. The manufacture, or possession with intent to manufacture or deliver here was a felony punishable by imprisonment not exceeding fifteen years or a fine not in excess of two hundred fifty thousand dollars ($250,000), or both. 35 P.S. § 780–113(f)(1).

Furthermore, the information accumulated prior to the arrest was reasonably trustworthy. The confidential informant had disclosed information on three occasions prior to appellant's arrest, resulting in three separate arrests and the confiscation of narcotics on all three occasions. The officers' independent surveillance of appellant, his home and motor vehicle, confirmed the informant's accuracy in describing appellant's race, physical stature, age, attire, address and vehicle model, year, color and tag number. The plausibility of the informant's description of appellant's beard and cowboy hat and boots was particularly noteworthy. Most significant was Officer Stackhouse's detection of the methamphetamine odor before actual entry into appel-

lant's private living area. As alluded to earlier, this odor was not alien to him.

Next, it was indisputable that appellant was inhabiting the residence at 3831 Haverford Avenue. Afterall, appellant was seen leaving the house, re-entering it, and poking his head outside the vestibule. Leaving the scene for the acquisition of an arrest warrant intensifies the likelihood that a suspect will escape, particularly in light of his apparent awareness of the surveillance. Finally, the entry into the vestibule and the first floor rooms was peaceable. Appellant confronted the two officers in the vestibule, no weapons were drawn nor forced entry utilized; there was no further evidence of the use of physical force to detain appellant. We conclude, therefore, that the aforementioned factors necessitate a finding of exigent circumstances underlying the warrantless arrest.

■ Insofar as there was no testimony that he actually possessed or inhabited the second and third floors, appellant argues that there was insufficient evidence of his possession of methamphetamine. In determining whether the evidence was sufficient to sustain the conviction, all evidence must be viewed in favor of the Commonwealth's position and all reasonable inferences drawn from the evidence must support the verdict-winner. *Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981).

■ The confiscated methamphetamine and laboratory equipment were not taken from appellant's person; therefore, nothing supports a finding of actual possession. Constructive possession of controlled substances arises, and sustains a conviction, where the accused has the power and intent to control the substances. *Commonwealth v. Ferguson*, 231 Pa.Super. 327, 331 A.2d 856 (1974); *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971).

■ The real estate deed and public utility invoices for the entire building reflected appellant as the title owner; no evidence of any other person's presence was discovered; and, the key to the door leading to the second and third floors was taken from the first floor which appellant indis-

putably inhabited at the time of arrest. The power to control the upper two floors was supported by the evidence.

■■■ The intent to control a controlled substance is demonstrated by knowledge of its presence. *Ferguson,* supra; *Commonwealth v. Armstead,* 452 Pa. 49, 305 A.2d 1 (1973). There was no direct evidence that appellant knew the methamphetamine laboratory was on the third floor; consequently, we look to the surrounding circumstances for an inference of knowledge. *Commonwealth v. Cash,* 240 Pa.Super. 123, 367 A.2d 726 (1976). Where it appears that only the accused has access to the area where the drugs were found, intent to possess is established. *Commonwealth v. Hannan,* 229 Pa.Super. 540, 331 A.2d 503 (1974). We find no evidence, nor does appellant allege, that anyone else had access to any portion of the row house. Viewed in a light most favorable to the Commonwealth, evidence of intent to control the methamphetamine sustained a finding of constructive possession.

Having found probable cause for the issuance of a search warrant, it is not necessary to address appellant's remaining argument of no probable cause for a warrantless search.

Judgment of sentence affirmed.