579 A.2d 854

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Sergio LOPEZ, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 12, 1989.

Per Curiam Filed: Aug. 24, 1990.

Amended Sept. 19, 1990.

Opinion in Support of Affirmance
Aug. 24, 1990.

186

Gerald B. Ingram, Gail P. Wilson, John W. Packel, Chief, Appeals Div., Leonard N. Sosnov, Asst. Defender, for Amicus–Defender Assn. of Phila.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Maxine Stotland, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## AMENDED ORDER OF COURT

PER CURIAM.

The Court being equally divided, the judgment of the Superior Court is affirmed.

LARSEN, J., files an opinion in Support of Affirmance joined by McDERMOTT and PAPADAKOS, JJ.

PAPADAKOS, J., files a concurring opinion in Support of Affirmance.

NIX, C.J., files an opinion in Support of Reversal joined by FLAHERTY, J.

ZAPPALA, J., files an opinion in Support of Reversal joined by NIX, C.J., and FLAHERTY, J.

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

I would affirm the Superior Court order and in support thereof adopt the Superior Court Memorandum Opinion which is attached hereto.

McDERMOTT and PAPADAKOS, JJ., join in this opinion in Support of Affirmance.

### APPENDIX

## IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 01702 Philadelphia, 1987

Filed March 7, 1988

Commonwealth of Pennsylvania, Appellant

v.

Sergio Lopez,

Appeal from the Order Entered on May 7, 1987, in the Court of Common Pleas of Philadelphia County, Criminal Division, at No. 8606–451/452.

Before: WIEAND, KELLY and HESTER, JJ.

MEMORANDUM:

This is a Commonwealth appeal from the May 7, 1987 order of the Court of Common Pleas of Philadelphia County which granted appellant's pretrial motion to suppress evidence. We reverse.

The facts are as follows. Relying on a tip that an Hispanic male was selling drugs on the corner of Howard and Somerset Streets in Philadelphia, undercover Police Officer Freddie Chaves went there about 4 p.m. on April 21, 1986. A male later identified as Charlie Garcia approached Chaves and asked him what he wanted. Chaves replied that he wanted a $10.00 bag of cocaine, and Garcia indicated he had to get it.

Garcia walked to 2749 North Howard Street and knocked on the door. Appellant, Sergio Lopez, came to the door, looked toward Officer Chaves, then handed Garcia a clear plastic packet. Garcia gave the packet to Chaves, who gave Garcia a prerecorded $20.00 bill. Garcia returned $10.00 to the officer.

Chaves then drove around the block, notified his back-up that the exchange had occurred, and returned to 2749 North Howard Street. Appellant's back-up, Corporal Murphy and Officer Brosnan arrested Garcia at the corner. Officers Wilbert Kane and Mack McDonald arrested appellant in the house.

Officer Wilbert Kane testified that the house at 2749 North Howard Street had a wooden door and either a screen door or steel grating on the outside. As the officers approached the house, the screen door was ajar and the wooden door was open about a foot. Before entering the premises, the police observed appellant repairing the ceiling while standing on a board balanced between two ladders, and a second man repairing a window. Officer Kane testified that he did not have to open the door any further. The police entered the premises and announced their identity.

Appellant held a hammer and was surrounded by hammers, saws and other tools that could be used as weapons.

Officer Kane ordered appellant to climb off of the board while simultaneously clearing the tools from appellant's reach. One of the items cleared away was a brown paper bag which had been folded outward, and which Kane believed to contain nails. As he moved it, however, he noticed it was filled with money. When Kane removed the money, there were clear plastic packets containing white powder underneath. Kane then frisked appellant and removed a wad of money from appellant's pocket. The total money seized was $1,575.00 from the paper bag and $614.00 from appellant's pocket. The prerecorded twenty dollar bill was found in the money taken from appellant's pocket. There were also five Ziploc plastic bags, each containing ten smaller plastic bags, which were filled with white powder. Police also confiscated twelve loose packets which, with the packet purchased by Officer Chaves, totaled sixty-three.

The Commonwealth contends on appeal that the suppression court erred in ruling that police were not presented by exigent circumstances justifying appellant's warrantless arrest. For the reasons which follow, we agree.

Our first inquiry in determining the lawfulness of a warrantless arrest is to ascertain whether probable cause existed at the time of the arrest. *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979). In the present case, the suppression court found that probable cause did indeed exist, and this determination is not challenged on appeal.

We must next ascertain whether there were exigent circumstances sufficient to justify appellant's warrantless arrest. In *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), the Pennsylvania Supreme Court enumerated the following relevant factors to be considered when determining whether exigent circumstances existed: 1) the gravity of the offense; 2) a reasonable belief that the suspect is armed; 3) a clear showing of probable cause; 4) strong reason to believe that the suspect is on the premises; 5) likelihood that the suspect will escape if not quickly apprehended; 6) the time of the entry; and 7) whether the entry is peaceable.

The suppression court specifically noted that police "had sufficient information to warrant a reasonable man in the belief that a crime had been committed and the defendant was involved," suppression court opinion at 4, but it did not analyze the factors enumerated in *Williams.* Instead, it found generally that there were no exigent circumstances present in this case.

Our review of the record compels the conclusion that the application of the *Williams* factors weighs in favor of finding appellant's warrantless arrest proper. Initially, the gravity of the offense was severe. Possession with intent to deliver is a felony, punishable by imprisonment not exceeding fifteen years or a fine not in excess of $250,-000.00, or both. *See Commonwealth v. Miley,* 314 Pa.Super. 88, 97, 460 A.2d 778, 783 (1983) ("[T]he gravity of the offense [of possession with intent to deliver] was severe.").

We previously noted that probable cause was shown, thereby satisfying the third factor in *Williams.* The fourth criterion, a strong reason to believe that the suspect is on the premises, is clearly present, as appellant was observed by several officers at the residence. Next, the entry was shortly after 4 p.m., in the daylight hours. Further, the entry, and therefore the arrest, followed the commission of the crime by mere minutes. *Cf. Commonwealth v. Williams, supra* (homicide pre-dated date of arrest by three years, so little need of swift apprehension); *Commonwealth v. Wagner, supra* (no need of swift apprehension as theft occurred six months earlier).

The second *Williams* factor, whether or not police held a reasonable belief that the suspect was armed, was not investigated during the suppression hearing. However, we agree with the Commonwealth's observation that experienced narcotics officers may have expected that appellant, engaged as he was in observable drug selling, was indeed armed. The fifth criterion enumerated in *Williams,* the likelihood of appellant's escape if not quickly apprehended, is certainly present here. Tied with this factor is the

likelihood that the drugs and marked government money might disappear.

Finally, *Williams* requires that we examine the nature of the entry. Officer Kane testified that both the outer and inner doors of the residence were open. He estimated that the inner wooden door was open about a foot, and stated that he did not have to open the door any further. When Kane ordered appellant to climb down from the scaffold, he cooperated; the entry was certainly peaceable.

In reviewing the ruling of a suppression court, our standard of review is limited to ascertaining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987). It is clear that the suppression court's conclusion, that "the record is absent any facts" which would have allowed the court to conclude that police were presented with exigent circumstances justifying appellant's arrest, is not supported by the record. Further, as appellant's arrest was legal, the officers were lawfully in a position to observe the opened paper bag containing money and drugs. *Commonwealth v. Pytak*, 278 Pa.Super. 476, 420 A.2d 640 (1980).

The May 7, 1987 order to suppress is reversed and this case is remanded for proceedings consistent with this opinion.

Order reversed. Jurisdiction relinquished.

PAPADAKOS, Justice, concurring opinion in Support of Affirmance.

How often it has been said that the home is one of our most cherished possessions, "a man's home is his castle," and the Chief Justice waxes eloquently in repeating this sentiment in his Concurrence in Support of Reversal. But, in our zeal to protect the rights of an accused, has this sentiment become nothing more than a smokescreen behind which the nefarious schemes of the wicked are hatched and carried out?

Do we really mean to protect those "homes" which are nothing more than warehouses for the storage of drugs which are to be illegally sold, or for storerooms in which these drugs are illegally sold, or kitchens in which these drugs are cooked and manufactured for illegal sale, or places of illegal prostitution in which the sellers of flesh reside, or places in which illegal gambling activities take place, et cetera, et cetera, et cetera.

We decry, and demand to protect against, the stormtroopers' tactics while, at the same time, we accept the draping of the Constitution around these criminal employments much as the Axis Powers in World War II were wont to drape their munitions' factories and arms stockpiles with Red Cross, or other hospital, insignia in order to fool the tender-hearted Allies who would never dream of bombing a hospital.

Surely, I have no problem with the need of probable cause to exist before a police officer enters any private structure, be it a "home" or otherwise. I do have a problem, however, reconciling the need for a warrant issued by a magistrate upon the affidavit of the police officer, with the lack of a warrant when probable cause actually exists. Either a police officer has probable cause or he doesn't. The failure to obtain a warrant does not alter the fact that probable cause exists. And if probable cause does not exist, it matters not that a warrant was issued.

In the final analysis, it is the testimony of the police officer which controls the propriety of the event. It matters not that a magistrate was or was not involved because the entire event can, and most likely will be, reviewed by a suppression court which can find the existence, or lack thereof, of probable cause to support the entry of the police officer into an occupied structure. The existence of a warrant issued by a magistrate upon the affidavit of the police officer is not unassailable as has been shown in so many cases in which the warrant has been found defective for so many reasons, procedural and substantive.

I think the time has arrived when we must take a serious look at the meaning of "the sanctity of the home" and the necessity of a warrant when probable cause exists to warrant the police in entering suspected premises to search and/or make an arrest. What is the nature of this "home" we so desperately seek to protect from the intrusion of governmental stormtroopers?

In the case at hand, Officer Chavez witnessed, and participated in, the sale and purchase of drugs. He saw the participants, seller, agent, and buyer (himself as an undercover agent) and had every right to make the necessary arrest on the spot. In the excercise of caution, however, he chose to call back-up police who were waiting in the wings. Together they made the necessary entry into premises known to be the retail outlet for the sale of drugs, made the necessary search of all contraband in plain view, and executed the appropriate arrest. The delay in obtaining a warrant would not have changed the facts but may have given time to the evil protagonists to dispose of the "goods."

I have no hesitancy in joining the Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

NIX, Chief Justice.

The sanctity of the home is one of the hallmarks of our basic concept of a free society. It distinguishes our form of government from the totalitarian rule where the state can intrude upon the private life of its subjects at its slightest whim. Further, our society is not rendered impotent in situations where immediate entrance is justified by exigent circumstances. The instant case provides a clear illustration of the type of precipitous police behavior which, if permitted and justified, would quickly transform our society to a police state and dismantle the tradition this nation was founded to establish.

It is true that the scourge of drugs is of alarming concern and its continued presence in our midst with its attended violence cannot be tolerated. The validity of this concern, however, should not be allowed to ignite a hysterical response that could disturb the entire fabric of the society to which we are committed.

In this instance the law enforcement officers, through an emissary, had obtained a purchase of cocaine from the suspect inside the premises which was under surveillance. The police could have maintained their vigil until a search warrant was obtained. There was, in this case, no indication that the occupant of the dwelling was making any effort to leave the premises; thus there were no exigent circumstances to justify a warrantless entry and arrest. Regrettably, I can find no basis for the precipitous action taken here and the grant of the motion to suppress should be reinstated.

FLAHERTY, J., joins in this opinion in support of reversal.

## OPINION IN SUPPORT OF REVERSAL

ZAPPALA, Justice.

We granted Appellant's Petition for Allowance of Appeal requesting that we review the order and memorandum opinion of the Superior Court reversing the order of the Court of Common Pleas of Philadelphia County which had suppressed physical evidence seized from the Appellant at the time of his arrest. Because the Superior Court exceeded its scope of review I would reverse.

The proper scope of review in determining the propriety of a suppression order is limited to determining whether the factual findings of the suppression court are supported by the record and whether the legal conclusions drawn therefrom are in error. *Commonwealth v. Webb*, 491 Pa. 329, 421 A.2d 161 (1980). In reviewing the determination of the suppression court, the Superior Court must view the facts in the light most favorable to the prevailing party. *Com-*

*monwealth v. Robinson,* 518 Pa. 156, 541 A.2d 1387 (1988). Viewing these facts in the light most favorable to the Appellant as the prevailing party, it appears that on April 21, 1986, at 4:00 p.m., Officer Chaves, an undercover policeman, was approached by Charlie Garcia regarding the sale of $10.00 worth of cocaine. Garcia informed Officer Chaves that he would purchase the drugs for the Officer. Garcia then walked to 2749 North Howard Street, knocked on the door, and while remaining outside the screen door received a small package. In return, Garcia gave the male occupant, now identified as the Appellant, a pre-recorded $20.00 bill and received a $10.00 bill in change. This whole transaction was observed by Officer Chaves. Garcia then proceeded back to where Officer Chaves was parked and gave him the packet and a $10.00 bill in change. Officer Chaves then drove around the corner and informed his back-up units surrounding the house to move in.

Officers McDonald and Kane then proceeded to the residence. The outside door was opened a couple of inches while the inside door was opened about a foot. Officer Kane observed the Appellant in the living room fixing the ceiling while standing on a board that was laying across two ladders. Without knocking and identifying themselves or otherwise receiving any permission to enter, the police officers entered the premises and placed Appellant under arrest. At that time, the Appellant had a hammer in his hand and was surrounded by other equipment. Officer Kane ordered the Appellant to put down the hammer, which he did, and then Officer Kane cleared the board of the equipment. On that board was a brown paper bag which Officer Kane believed contained nails. When he removed the bag, Officer Kane noticed that it contained money, removed the money and discovered clear plastic packets of a white powder later identified as cocaine. Officer Kane then frisked the Appellant and found a wad of money, which contained the pre-recorded $20.00 bill.

Appellant was arrested for delivery of a controlled substance, possession with intent to deliver a controlled sub-

stance, knowing and intentional possession of a controlled substance and criminal conspiracy. He filed a timely motion to suppress the physical evidence arguing that the arrest was illegal and that seizure of all the physical evidence seized was done without a proper search warrant. After taking testimony, the suppression court found that although there may have been probable cause to arrest the Appellant, no exigent circumstances were present to justify either the warrantless arrest or search of the Appellant in his home.

On appeal, the Superior Court reversed, determining that the suppression court erred in its application of *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), cert. denied 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), to the record facts. Because the Superior Court has exceeded the proper scope of review and has substituted its discretion for that of the suppression court I would reverse.

In *Commonwealth v. Williams*, supra, we held that a warrant is required to validly arrest someone in his home unless exigent circumstances exist to justify a warrantless intrusion. We also adopted a weighing process of the following factors in determining whether exigent circumstances existed:

1. Whether a grave offense is involved, particularly one that is a crime of violence;

2. Whether a suspect is reasonably believed to be armed;

3. Whether there exists not merely the minimum of probable cause that is requisite even when a warrant has been issued, but beyond that a clear showing of probable cause to believe that the suspect committed the crime;

4. Strong reason to believe that the suspect is on the premises being entered;

5. A likelihood that the suspect will escape if not swiftly apprehended; and

6. Whether the entry, although not consented, is made peaceably.

The *Williams* test was relied upon by both lower courts in disposing of this matter. Having considered these factors in light of the testimony, the suppression court suppressed the physical evidence finding that exigent circumstances did not exist to excuse the lack of a warrant for either the arrest or the search. The Superior Court, however, viewed the evidence differently and based upon *Williams* justified the warrantless search. Reviewing the record in light of *Williams,* I cannot agree with the Superior Court. It is clear that the crimes involved were not crimes of violence. Furthermore, there was no testimony establishing that the Appellant was armed. Although Officer Kane did testify that he believed that the equipment surrounding the Appellant could be used as a weapon, this observation occurred *after* entry and arrest and not *before.* In discussing this factor, the Superior Court concluded that since the Appellant was engaged in observable drug selling it was reasonable to believe that he was indeed armed. Under this record this speculation is not sufficient to satisfy the second factor.

The suppression court did find that probable cause existed for Appellant's arrest and the record appears to support its conclusion that there was a clear showing of probable cause. Although there was no question that the Appellant was in his residence, there was no evidence to support the contention that the Appellant was likely to escape. Like the second factor, the Superior Court concocted a contrary conclusion on the basis of its own assumptions. Finally, it is arguable as to whether the entry was accomplished through peace or force. The purpose of the sixth factor is to give the suspect the opportunity to surrender prior to an invasion of his privacy. In this instance, the police did not knock and announce their presence, but rather "squeezed" through an opening in the Appellant's screen door and front door. Once again, under this record, satisfaction of the sixth factor is questionable.

Weighing these factors under this record, there is no basis for finding that the suppression court abused its

198

discretion in suppressing the evidence. Although the suppression court did not specifically cite to the *Williams* test, it is clear from its discussion on the record that it evaluated the Commonwealth evidence in light of *Williams* and determined that the weight of the evidence supported suppression because exigent circumstances did not exist for seizure without a warrant. As such, the Superior Court erred in substituting its own judgment for that of the suppression court.

NIX, C.J., joins this opinion and files a concurring opinion.

FLAHERTY, J., joins this opinion and the concurring opinion of NIX, C.J.