421 A.2d 161

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**James WEBB, Appellant.**

Supreme Court of Pennsylvania.

Argued April 18, 1980.

Decided Sept. 22, 1980.

Daniel M. Preminger, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Michelle Goldfarb, Asst. Dist. Attys., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

In a non–jury trial, James Webb was found guilty of murder of the first degree, arson, aggravated assault, simple assault, and risking a catastrophe. Post–verdict motions were denied, and Webb was sentenced to life imprisonment on the murder conviction; not less than ten nor more than twenty years imprisonment, concurrently, on the arson conviction; not less than two and one–half nor more than five years imprisonment, concurrently, on the simple and aggravated assault convictions. Webb then filed these appeals.[1]

The first assignment of error is the trial court's denial of a pre–trial motion to suppress the evidence of statements made by Webb to investigating police officers while he was in the hospital. It is argued these statements were involuntary and should not have been admitted as evidence because Webb's physical and mental condition at the pertinent time precluded a free and voluntary choice. Our scope of review is limited to determining whether the factual findings of the suppression court are supported by the record and whether the legal conclusions drawn therefrom are in error. *Com-*

1. An appeal from the sentence imposed on the murder conviction was filed directly in this Court. An appeal from the other judgments of sentence was filed in the Superior Court and certified here.

monwealth v. Hall, 475 Pa. 482, 380 A.2d 1238 (1977). The suppression court found the following facts in reference to the challenged evidence.

Webb was admitted to the hospital at 12:30 a. m. on December 16, 1976 in fair condition but suffering from second degree burns to the face, ears, and hands. The attending physician prescribed percodan, a painkiller which does not reduce an individual's sensorium,[2] to reduce Webb's discomfort. Webb was advised, if the pain persisted or increased, he could have a sedative; but he made no such request. The attending physician spoke with Webb several times on December 16, and 17, 1976 and concluded Webb's sensorium was clear and well–oriented. A detective, at 10:35 a. m. on December 17, 1976, requested and received permission from the attending physician to speak with Webb. The detective advised Webb he was to be questioned about the arson death of Clarence Keyes which occurred on December 15, 1976. The detective read the Miranda[3] warnings, and, after Webb indicated he understood the warnings and was willing to answer questions, he was questioned by the detective until about 10:53 a. m. Although in discomfort, Webb appeared lucid, alert and cooperative, and not under the influence of narcotic medication. Webb was considerably improved on December 18, 1976, and his sensorium remained clear and well–oriented. Another detective interviewed Webb in the hospital on December 18, 1976 from about 9 a. m. to 9:35 a. m. after obtaining permission from the supervising nurse. Webb was again advised he was going to be questioned about the arson murder, was warned of his rights, and again indicated he understood. Webb answered some questions but then invoked his constitutional privilege to remain silent, and the interview ended. We find ample support for the foregoing findings of fact in the record.

2. Sensorium is an individual's ability to speak, hear, and think clearly.

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Turning now to the suppression court's conclusions of law, we must determine, considering the totality of the circumstances surrounding Webb's questioning, whether his statements were a result of factors which overwhelmed his ability to exercise a reasoned choice. *Commonwealth v. Hunt*, 263 Pa.Super. 504, 398 A.2d 690 (1979).

■ The suppression court concluded the Commonwealth proved by a preponderance of the evidence that, on December 16 and 17, 1976, Webb's physical condition did not interfere with his ability to exercise an unfettered will. This conclusion is fully supported by the following facts. On both December 17 and 18, 1976, Webb was informed of his constitutional rights and indicated he understood those rights before submitting to the detectives' questioning. The drugs used in his treatment did not affect his ability to think clearly. His pain was apparently tolerable since he was offered a sedative but declined it. Finally, numerous conversations with the attending physician led that physician to conclude his sensorium was not impaired. Moreover, Webb exercised his right to remain silent during the second period of questioning. Given these facts, we are not persuaded the suppression court erred in concluding Webb's hospital statements were voluntary.[4] Cf. *Commonwealth v. Perry*, 475 Pa. 1, 379 A.2d 545 (1977) (plurality opinion concluding hospital confessions should be scrutinized closely).

■ Next, Webb claims his trial counsel was ineffective in three different instances.[5] Initially, Webb argues his trial counsel was ineffective for failing to file a motion to suppress evidence concerning clothing seized from the possession of his brother. This argument fails because a review of the record demonstrates a motion to suppress the evidence

---

**4.** Webb also contends that yes and no answers to *Miranda* are insufficient to establish an effective waiver of constitutional rights. This claim is meritless. See *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979); *Commonwealth v. Walker*, 470 Pa. 534, 368 A.2d 1284 (1977) (specifically concurring opinion, Eagen, J.; joined by Jones, C. J., O'Brien and Pomeroy, JJ.).

**5.** Webb is represented by counsel other than during any previous stage of these proceedings.

of this clothing was in fact made and denied. During the direct examination of Nathan Webb, appellant's brother, the Commonwealth sought to introduce into evidence the clothing worn by Webb when he was burned on December 15, 1976. At that time, Webb's counsel objected to its introduction, and the trial judge, in the interest of justice, entertained a motion to suppress. See *Commonwealth v. Cooke*, 260 Pa.Super. 528, 394 A.2d 1271 (1978); Pa.R.Crim.P. 323(b). The testimony already introduced at trial provided the facts and circumstances surrounding the seizure, and the court considered this testimony and allowed argument on the motion. During argument, additional evidence was presented by the Commonwealth, and the defendant was afforded the opportunity to present evidence. After hearing the evidence and argument, the court denied the motion. Furthermore, the propriety of the order denying suppression was also raised by trial counsel in post–verdict motions and considered by the court on its merits. Therefore, trial counsel cannot be found to have been ineffective for not seeking suppression since he did so. Since present counsel has not raised the merits of the court's ruling denying the suppression, we need not consider it.[6]

Webb's next contention of ineffectiveness stems from trial counsel's failure to object to the Commonwealth's impeachment and cross–examination of its own witness without first pleading surprise. An examination of the underlying facts demonstrates this claim to be meritless.

The witness whose examination is in question is Webb's brother. Prior to trial, he had given a statement in which he said that Webb had admitted setting the fire. The Commonwealth called him as a witness and asked whether Webb had made any statements concerning the origin of the fire. He replied no, but Webb had indicated he was at the scene at the time of the fire. At that point, the prosecutor began asking whether the witness had given a different

---

**6.** As to the merits of this claim, see *Commonwealth v. Silo*, 480 Pa. 15, 389 A.2d 62 (1978), wherein a nurse, as opposed to an accused's brother, was held to be without authority to consent to a police seizure of a patient's clothing.

statement to the police investigators; he admitted he had and finally testified that his brother, the accused, had told him he set the fire.

Webb argues that, since the Commonwealth had not pleaded surprise, trial counsel should have objected to this impeachment and was thus ineffective for not doing so. It is well–established that counsel cannot be ineffective for failing to make baseless or fruitless objections. *Commonwealth v. Wilson*, 482 Pa. 350, 393 A.2d 1141 (1978); *Commonwealth v. Gray*, 473 Pa. 424, 374 A.2d 1285 (1977). Under the circumstances, it is obvious that, if an objection had been made, the Commonwealth would merely have entered a plea of surprise and then been allowed to conduct the examination in the manner it did. Hence, an objection would have been a futile gesture. See *Commonwealth v. Duffy*, 238 Pa.Super. 161, 353 A.2d 50 (1975); *Commonwealth v. Settles*, 442 Pa. 159, 275 A.2d 61 (1971); *Commonwealth v. Gurreri*, 197 Pa.Super. 329, 178 A.2d 808 (1962); *Commonwealth v. Bartell*, 184 Pa.Super. 528, 136 A.2d 166 (1957); *Commonwealth v. Joseph*, 182 Pa.Super. 617, 128 A.2d 121 (1956). Thus, trial counsel cannot be deemed ineffective in this instance either.

Webb contends trial counsel was ineffective for failing to call as witnesses at the pretrial suppression hearing the hospital records custodian and his two brothers.

In determining the effectiveness of counsel, it is presumed counsel acted diligently and reasonably on his or her client's behalf, and this presumption can be overcome only if no reasonable basis exists for the action taken or omitted. *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). The issue here thus becomes whether an available course not chosen would have offered a potential for success substantially greater than that which was done. *Com. ex rel. Washington v. Maroney*, supra, 427 Pa. at 605 n.8, 235 A.2d at 353 n.8.

Webb claims the hospital records custodian would have testified that in addition to percodan, which the attend-

ing physician testified Webb was given, Webb also received morphine, nembertal, and morphinbutal. Webb claims this testimony would have been relevant to the issue of voluntariness. The hospital records custodian did testify as a Commonwealth witness at trial, and our examination of her testimony undercuts Webb's argument.

During cross-examination, Webb's counsel asked the hospital records custodian what drugs were administered to Webb from December 16, 1976, his admission date, until December 25, 1976. She testified he received morphinbutal, morphine, nembertal, and percodan during that period. However, during redirect examination, she corrected herself and stated that morphinbutal, morphine, and nembertal were administered on December 16, 1976 only. In reviewing the exhibits entered into evidence at trial, the hospital records show that morphine, nembertal, and morphinbutal were administered only once, at the time of his admission. Since the police questioning took place some thirty-four hours later, the effect of these injections would have been dissipated at the time of the police questioning. Hence, calling the hospital records custodian as a witness or presenting the hospital records as evidence at the suppression hearing would not have aided or supported the suppression motion. Under these circumstances, trial counsel cannot be deemed ineffective. See *Commonwealth v. Robinson*, 487 Pa. 541, 410 A.2d 744 (1980); *Commonwealth v. Lochman*, 265 Pa.Super. 429, 402 A.2d 513 (1979).

Webb claims his brothers would have testified that they visited him in the hospital and he appeared to be in intense pain, had trouble talking, was incoherent, and was not in his right mind. Webb contends this evidence would have demonstrated that, at the time he was questioned by detectives, he was incapable of making any statements voluntarily.

■ Under the circumstances presented, we hold that not calling the brothers at the suppression hearing did not forgo an available course which offered a substantially greater potential for success and that the course chosen had a reasonable basis.

The thrust of the testimony of the brothers who were called by the Commonwealth was that they visited Webb at various times which included visits about the times Webb provided statements to police; that Webb was in pain during all the visits; that he had told them various stories about what had occurred, but had in the main indicated Gloria Jean Jackson had thrown something on him which was ignited by a cigarette. This latter explanation corroborated Webb's testimony at trial.[7] Each brother was confronted during his testimony with statements he made to police in which he indicated Webb admitted that "he did it."

First, the brothers' testimony regarding Webb's condition would have been cumulative of that which was brought out through examination of both the attending physician and Webb himself. Second, had they testified at the suppression hearing, their testimony at trial which in the main corroborated Webb's recount of events would have been seriously weakened by any testimony in support of a claim that Webb was incoherent when they visited him because the Commonwealth would then have been able to show by use of the suppression testimony that Webb's statements to them which corroborated his testimony at trial were given while, in the brothers' opinions, he was incoherent. Hence, the record shows that counsel, rather than weaken this corroborative testimony by having the brothers testify at the suppression hearing that Webb was incoherent when he made statements which corroborated his own testimony, chose to forgo this cumulative testimony regarding Webb's condition in order to preserve the credibility of the corroborative testimony. Accordingly, the record reveals a reasonable course was chosen and one offering a substantially greater potential for success was not forgone.

Judgment of sentence affirmed.

7. The testimony here recounted, when compared with that of the brother recount supra indicates it was also inherently inconsistent. For this reason also, counsel may have determined it would not be credible.