507 A.2d 357

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James McGAGHEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 6, 1985.

Decided March 27, 1986.

W. Thomas Anthony, Jr., Bethlehem, for appellant.

Donald B. Corriere, Dist. Atty., Bethlehem, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

This appeal arises out of convictions for robbery, simple assault and conspiracy. The facts may be summarized as follows: On May 21, 1981, at approximately 9 p.m., Thomas Talbot offered Robin Gentry a ride to the Victaulic Plant in Easton, Northampton County. Upon arrival at the parking lot, Talbot and Gentry were surrounded by four or five people, including Gentry's boyfriend, John Miller, two or three other white males and one black male. Miller ques-

tioned Talbot as to why he was with Miller's girlfriend. A scuffle ensued, during which time Miller directed someone to take Talbot's wallet. When Talbot felt his wallet being removed from his pocket, he turned around and noticed that the black man who had been standing behind him was removing his wallet. The entire incident lasted approximately one minute although Talbot only viewed the black man for about two seconds as he came from behind and removed Talbot's wallet. Talbot further indicated that while the parking lot was lit, the incident did not occur directly under any light. He characterized the conditions as not very dark but not very well lit either.

Subsequently, Talbot reported the incident to the police describing his assailants as wearing "dark clothing" and being "younger people". He failed to indicate that the black assailant had a beard and mustache. Furthermore, Talbot had never seen any of his assailants prior to the robbery. Finally, Talbot indicated that prior to the incident he drank probably more than eight mugs of beer.

Gentry and Miller were both arrested. Upon questioning, both indicated to the police that the black man who participated in the crime was named "Joe Ball". Subsequently, Gentry indicated that Ball's nickname was "Peanut". At no time did either Gentry or Miller indicate that Joe Ball and the Appellant were the same person. It was the disclosure of this nickname rather than Talbot's description that resulted in the Appellant's arrest. After his arrest, Appellant was never identified by Talbot either in a lineup or photographic array. Talbot actually saw the Appellant for the first time at the preliminary hearing which was held one and one half months after the incident.

At the preliminary hearing, Talbot was in the magistrate's office before the Appellant was brought into the office. Appellant was brought in wearing handcuffs and was seated at defense counsel's table. The Appellant was the only black man in the room. During the hearing, Talbot then identified the Appellant as his assailant.

Prior to trial, the Appellant filed his omnibus pre-trial motion requesting the suppression of all identification testi-

mony as unduly suggestive. A suppression hearing was held and the motion denied. A three-day jury trial was held in November of 1981, resulting in the Appellant's conviction. After the post-trial motions were dismissed, Appellant was sentenced to undergo imprisonment for a period of not less than one nor more than three years. A timely appeal was filed with Superior Court which affirmed the judgment of sentence, 337 Pa.Super. 630, 487 A.2d 440. (Memorandum Opinion, Brosky and McEwen, Spaeth, P.J., dissenting). We thereafter granted allocatur and now reverse.

 The problem with an impermissible suggestive identification is the potential for misidentification, resulting in a due process violation if that identification is admitted at trial. *Commonwealth v. Silver.* 499 Pa. 228, 452 A.2d 1328 (1982). Suggestiveness alone will not forbid the use of an identification, if the reliability of a subsequent identification can be sustained. *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976) (Plurality Opinion). To do so, the Commonwealth must establish that the in-court identification resulted from the criminal act and not the suggestive encounter. *Fowler, supra.*

Most recently, in *Commonwealth v. James,* 506 Pa. 526, 486 A.2d 376 (1985), we reiterated the necessary factors in determining whether a victim had an independent basis for an in-court identification:

> ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. (citing *Commonwealth v. Slaughter,* 482 Pa. 538, 546, 394 A.2d 453, 457 (1978))

506 Pa. at 534, 486 A.2d at 380. In *James,* we determined that a subsequent in-court identification was not tainted by the suggestiveness of the preliminary hearing identification, because the victim observed her assailant for five to ten minutes during the assault, accurately described her assailant to the police within forty-five minutes of the altercation, and identified her assailant from a photographic array six

weeks after the assault. Thus, we concluded that the "...
victim did indeed crystalize her identification of Appellant
during the assault...." 506 Pa. at 533, 486 A.2d at 380.

■ Since our scope of review limits our consideration to
a determination of whether sufficient evidence has been
presented to support the independent basis for the in-court
identification, *Commonwealth v. Davis*, 491 Pa. 363, 421
A.2d 179 (1980); *Commonwealth v. Webb*, 491 Pa. 329, 421
A.2d 161 (1980), it is necessary to review this record in light
of the factors listed in *Commonwealth v. James, supra.*
Talbot testified that he had never seen the black assailant
prior the incident of May 21. During the occurrence, the
black man was behind Talbot only to be seen for about two
seconds while the wallet was being taken. Prior to the
occurrence, Talbot had been drinking. In addition, he was
very upset as a result of the incident. Although Talbot
testified that the black assailant's features were "burned
into (his) memory", the initial description to the police was
vague and failed to indicate that the assailant had a beard
and mustache.[1] Virtually none of the *James* factors are
met. Under these circumstances, the suppression court
erred in concluding other than that the in-court identifica-
tion was the result not of the incident, but of the confronta-
tion at the preliminary hearing.

Accordingly, the order of the Superior Court and the
Court of Common Pleas of Northampton County are re-
versed and this matter is remanded for a new trial.[2]

McDERMOTT, J., filed a concurring opinion.

PAPADAKOS, J., filed a dissenting opinion.

1. The evidence at trial indicated that at the time of the incident, the
Appellant did have a beard and mustache.

2. Because of our disposition of this appeal, it is unnecessary to
address the remaining issues raised by the Appellant: (1) Was the
defendant denied a fair trial because of highly prejudicial false testi-
mony presented by a Commonwealth witness? (2) Was the defendant
denied a fair trial by the addition, without notice to the defense
counsel, of new statements to the previously disclosed oral statement
of a co-defendant? and (3) Was the verdict contrary to the law,

McDERMOTT, Justice, concurring.

I concur in the result.

I write separately however to emphasize that the majority's opinion is grounded upon the unique factual circumstances of this case, and that the holding in this case should in no way be construed as espousing a formula for denigrating the reliability of eyewitness testimony.

PAPADAKOS, Justice, dissenting.

I dissent from the Majority's conclusion that Thomas Talbot's in-court identification of Appellant was not permissible because it was not supported by an independent basis. From my review of the record, sufficient evidence exists to support the conclusion that Talbot's in-court identification was not tainted by the suggestiveness of the preliminary hearing identification, because Talbot had an independent basis of recognizing Appellant. *Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376 (1985).

While Talbot had an opportunity to view the Appellant at the time of the crime for only a few seconds, the lighting was adequate, the Appellant was only a few feet away from Talbot and Talbot looked directly into Appellant's face. Talbot's attentiveness during the crime was very good and he indicated that he burned Appellant's face into his memory. His level of attentiveness was confirmed when, two weeks after the crime, he was able to identify Gentry and Miller (the other participants at the crime) from seeing them on the street. That Talbot's initial description of Appellant was vague does not detract from his reliability because Talbot kept insisting to the police that he could identify the perpetrators if he saw them and when the police drove him around the area of the crime, he did spot and identify two of the perpetrators. Talbot also exhibited definite certainty in all his identifications of Appellant. Talbot testified that he was "absolutely positive" that Appellant was the one who took his wallet. Finally, the six weeks between the crime

contrary to the weight of the evidence, and not supported by substantial evidence?

and the first opportunity to see Appellant was not so long that Talbot's memory would be impaired.

Under these circumstances, it seems to me that, in spite of the inherent suggestiveness of any preliminary hearing identification, independent factors exist in this case which can support a conclusion that Talbot's identification had an independent basis because of his observations at the time of the crime.