541 A.2d 1387

COMMONWEALTH of Pennsylvania, Appellee,

v.

Darryl ROBINSON, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 11, 1987.

Decided May 20, 1988.

John W. Packel, Chief, Appeals Division, Karl Baker, Philadelphia, for appellant.

Frances Gralnek Gerson, Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Asst. Dist. Atty., Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION

ZAPPALA, Justice.

On September 22, 1982, at 7:35 p.m., Joanne Woolsey was accosted, while she was carrying some packages, at the corner of Fourth and Kauffman Streets in the City of Philadelphia as she was walking toward her automobile. As she turned to her right, she observed two black males running toward her. One knocked her toward a metal fence, while his companion attempted to snatch her purse. After a struggle, one assailant managed to get control of her pocketbook and a folded paper bag. Having achieved their apparent goal, the assailants fled. Woolsey followed, never managing to come closer to her assailants than one-half of a city block. When the assailants entered the City projects, Woolsey returned to a nearby 7–Eleven convenience store and had a sales clerk contact the police.

Although the telephone call to the police was not actually made by Woolsey, she described her assailants to the clerk, who in turn advised the police of her description of her assailants as two black males, one wearing a short black jacket and dark jeans, the other wearing a maroon jacket and dark pants. Apparently, at some point a second call was made on behalf of Woolsey because two patrol cars responded to the call for help. As a result of a dragnet sweep of the projects area, individuals were returned to the 7–Eleven store area for positive identification by the victim. One of the individuals taken to the identification scene was the Appellant, who was positively identified by Woolsey.

Prior to trial, the Appellant filed a motion to suppress the identification at the scene and any in-court identification based upon the illegality of the arrest and the suggestiveness of the identification process. A hearing on this matter was held, during which both Woolsey and the Appellant testified. After taking testimony and reviewing memoranda of law, the suppression court granted the motion and suppressed the identification at the scene based upon Appellant's illegal arrest. No appeal was taken from this determination. The suppression court then gave the Common-

wealth the opportunity to offer additional evidence to demonstrate that any in-court identification would be independent of the identification at the scene. The Commonwealth declined to do so. The suppression court then suppressed all in-court identification as being tainted by the original suggestive identification process. The court concluded that, in addition to the original line-up being illegal, the inability of the victim to give any specifics of her assailants, such as height, weight or facial description, precluded a finding that any in-court identification would not be based upon the fixation of the Appellant from the original identification.

On appeal, Superior Court reversed, 343 Pa.Super. 616, 494 A.2d 485, finding that the record facts supported the independent basis of an in-court identification. Although the Superior Court stated the applicable scope of review as to whether the findings of the suppression court are supported by the record, *see Commonwealth v. Webb,* 491 Pa. 329, 421 A.2d 161 (1980), the court apparently reviewed the facts in the light most favorable to the Commonwealth. For this reason, we granted the Appellant's petition for allowance of appeal and now reverse.

■ Recently, we addressed the scope of review of a Commonwealth appeal from an adverse suppression court ruling in *Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983). Although *Hamlin* was not a majority opinion, its discussion of the applicable standard of review is correct, has been implicitly accepted by a majority of the Court, *see Commonwealth v. James,* 506 Pa. 526, 486 A.2d 376 (1985) and should be adhered to. In *Hamlin* we stated:

Here the Commonwealth is appealing the decision of the suppression court. Accordingly, they should be required to meet the same burden as a defendant who has lost below. Thus, where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. To hold otherwise would make a mock-

ery of the suppression court and place an impossible burden on every defendant regardless of his success or failure at the suppression hearing.

530 Pa. at 215–16, 469 A.2d at 139. In addition to the uncontroverted facts previously set forth, the record discloses the following facts.

Although it was dusk and the incident occurred three or four feet from a street light, Woolsey was only able to give a general description of the assailants' clothing. At no time was she able to give their height or weight, or whether her assailants had any distinguishing facial marks. On the day the incident occurred, the Appellant was scheduled for foot surgery as the result of injuries he suffered in an automobile accident on August 18, 1982. This injury severely limited his ability to run. At the time the Appellant was stopped, he was in the company of a companion whose clothing did not match the clothing of the victim's assailant's accomplice. After being confronted by the police officer, the Appellant was handcuffed and placed in a van. At the scene, the first and last assembly of suspects were seen as a group, while the Appellant was taken out of the van alone, wearing handcuffs.

Recently, we addressed the issue of suggestive identifications and the independent basis necessary to sustain a subsequent in-court identification. In *Commonwealth v. McGaghey*, 510 Pa. 225, 228, 507 A.2d 357, 359 (1986), we stated:

The problem with an impermissible suggestive identification is the potential for misidentification, resulting in a due process violation if that identification is admitted at trial. *Commonwealth v. Silver*, 499 Pa. 228, 452 A.2d 1328 (1982). Suggestiveness alone will not forbid the use of an identification, if the reliability of a subsequent identification can be sustained. *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976) (Plurality Opinion). To do so, the Commonwealth must establish that the in-court identification resulted from the criminal act and not the suggestive encounter. *Fowler, supra.*

In *McGaghey,* we had no problem in concluding that the in-court identification was the result not of the incident, but of the confrontation at the preliminary hearing. We based this conclusion on the factors set forth in *Commonwealth v. James, supra,* which provides a framework for determining the independent basis of an in-court identification:

> ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation. Citing *Commonwealth v. Slaughter,* 482 Pa. 538, 546, 394 A.2d 453, 457 (1978).

506 Pa. at 534, 486 A.2d at 380. Because of the nature of the proceeding, the Commonwealth has the burden to establish these factors in order to support the independent basis of the in-court identification.

■ Applying these principles to the appeal now before us, it is clear that the Commonwealth has not sustained its burden of proof. Woolsey testified that the intruders came from behind, and the resulting confrontation only lasted five to ten seconds. Although the Commonwealth argued that the lighting and length of time involved permitted Woolsey to identify the Appellant, the initial description was so vague that the police were able to pick up twenty individuals fitting that description within a matter of minutes. The suppression court concluded that the basis of the in-court identification was the suggestive identification, rather than the criminal act itself. There being sufficient evidence to support this conclusion, we have no recourse but to reverse the Superior Court's order and reinstate the order of the suppression court.

The order of the Superior Court is reversed and the order of the Court of Common Pleas of Philadelphia County is reinstated.

STOUT, J., did not participate in the consideration or decision of this case.