658 A.2d 801

**COMMONWEALTH of Pennsylvania**

v.

**Thomas D. LAWSON, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 31, 1995.

Filed May 8, 1995.

Gregory B. Abeln, Carlisle, for appellant.

Taylor Alison, Asst. Dist. Atty., Carlisle, for Commonwealth, appellee.

Before TAMILIA, HUDOCK and FORD ELLIOTT, JJ.

TAMILIA, Judge:

On November 4, 1993, a jury convicted appellant, Thomas Lawson, of the unlawful delivery[1] of 7.5 grams of cocaine to an undercover agent of the Harrisburg Police Department, working in conjunction with a confidential informant and agents from the Pennsylvania Bureau of Narcotics Investigation and Drug Control. After the denial of his post-trial motions, appellant was sentenced on May 31, 1994 to three (3) to six (6) years' imprisonment.

Lawson now appeals from the judgment of sentence and argues the court committed reversible error by allowing a deputy attorney general to prosecute the case in violation of the Commonwealth Attorneys Act.[2] Appellant contends the Cumberland County District Attorney's Office had no statutory basis upon which to ask for the help of the Attorney General's Office, but "merely deferred to the Drug Task Force and while ignoring the intent of the Act, requested the Deputy

1. 35 Pa.C.S. § 780–113(a)(30).
2. 71 Pa.C.S. § 732–101 *et seq.*

Attorney General, who was assigned to the Task Force, to prosecute the case as assistant district attorney." (Appellant's brief at pp. 8–9.)

The substance of appellant's attack on the drug prosecution is that the use of an Assistant Attorney General as an Assistant District Attorney is violative of the Attorneys Act, 71 P.S. §§ 732–101 *et seq.* Appellant relies on *Commonwealth v. Khorey/Trputec,* 521 Pa. 1, 555 A.2d 100 (1989), which establishes categorically that the Attorney General, pursuant to statute which supplanted common law, has no authority to supercede the District Attorney. This is derivative of the creation in the Pennsylvania Constitution, article IV, section 4.1 (adopted May 10, 1978) of the Office of Attorney General to be filled by election for a period of four years, not to be eligible to serve beyond two successive terms, as opposed to being appointed by the Governor. Incorporated in the enabling provision of the Constitution is the provision that "he shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." The statutory provision that created the powers and duties of the Attorney General, 71 P.S. §§ 732–101 *et seq.,* severely restricted and altered the powers exercised by an appointed Attorney General, which had existed for more than a century. In *Trputec,* the Supreme Court clearly details the limitations imposed upon the Attorney General in superceding the powers of District Attorneys in investigating and prosecuting cases. The Attorney General's power is controlled by statute, which is strictly construed. As it relates to this case, we must determine whether the appointment of a Deputy Attorney General by the District Attorney of Cumberland County, to conduct an investigation and prosecution violates the Attorneys Act, *supra,* as construed by the Supreme Court in *Trputec.*

To engage the Office of the Attorney General in investigation or prosecution under the Attorneys Act, the District Attorney must make a request pursuant to section 732–205(a)(3) Criminal Prosecution:

3. Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

Appellant and appellee agree such a request was not made nor is it alleged that the District Attorney lacked the resources to investigate or that an actual or apparent conflict existed. It is apparent in this case no request could be justified under the Attorneys Act.

In *Trputec,* the Supreme Court, speaking through Justice Stout, stated:

More importantly the district attorney has no inherent authority to grant to the attorney general powers the General Assembly has prohibited the attorney general from exercising.

Justice Stout goes on to say what is critical for disposition of the issue in this case.

The delegation of authority from a district attorney to a deputy district attorney is characterized by a different relationship than would be a "delegation" of authority to the attorney general. While a district attorney has control over deputy or assistant district attorneys because they are subordinates, such would not be the case with the attorney general, who would not be subject to the same supervision. In the absence of such control, the attorney general cannot be said to be a mere agent of the district attorney.

*Trputec, supra* 521 Pa. at 19–20, 555 A.2d at 109–110.

█ The record establishes the Cumberland County District Attorney appointed Deputy Attorney General Shawn C. Wagner as a Special Assistant District Attorney for Cumberland County to prosecute defendant's case. The Cumberland County District Attorney did not invoke the Commonwealth Attorneys Act, which delineates in what instances the attorney general may prosecute county criminal actions, but rather relied on the authority set forth in 16 Pa.C.S. § 1420, Assis-

tant District Attorney; Number; Compensation, granting the district attorney the power to appoint assistant district attorneys or special assistant district attorneys to assist him in his duties. At no time did the district attorney relinquish his authority to prosecute the case; he maintained control and supervision of Wagner's strategic and tactical trial decisions. This met the stringent test propounded by *Trputec* for regulating the powers of the Attorney General and the relationship of that office to District Attorney. There was no error.

Next, appellant argues the court erred by failing to suppress undercover detective LeCadre's in-court identification of appellant as the individual who sold him the cocaine. Appellant contends the Commonwealth failed to establish the identification resulted from LeCadre's observation of him during the criminal act, and not from a photo array which the court had suppressed "because a reconstruction of the array for purposes of judicial review has been rendered impossible[.]" (Omnibus Opinion, Oler, J., 3/12/93, p. 7.)

An in-court identification following a suggestive out-of-court identification is admissible if, considering the totality of the circumstances, the in-court identification has an independent origin "sufficiently distinguishable to be purged of the primary taint." *Commonwealth v. Ransome*, 485 Pa. 490, 497, 402 A.2d 1379, 1383 (1979). The Commonwealth must then establish the in-court identification results from the criminal act and not the suggestive encounter. *Commonwealth v. McGaghey*, 510 Pa. 225, 507 A.2d 357 (1986). The framework for determining the independent basis of an in-court identification follows:

> ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 228, 507 A.2d at 359, *citing Commonwealth v. Slaughter*, 482 Pa. 538, 546, 394 A.2d 453, 457 (1978).

■ LeCadre was introduced to appellant, nicknamed Butter, by confidential informant Ewell who told appellant LeCadre wished to purchase a quarter ounce of cocaine. The three men met outside 125 West North Street, and appellant went inside the residence while LeCadre and Ewell waited outside. Within minutes, appellant exited carrying a plastic bag containing a white substance. LeCadre said the street lighting was sufficient for him to see appellant's face. Appellant then asked LeCadre and Ewell to follow him down the street to 103B West North Street where all three men entered the house, but only appellant went upstairs and immediately returned with a plastic bag containing a chunk of white substance. LeCadre gave appellant $300 and appellant handed him the white substance which was later identified as 7.5 grams of cocaine. LeCadre testified the lighting inside and outside 103B was such that he had no difficulty observing appellant's physical characteristics. Immediately after his encounter with appellant, which lasted 10 to 12 minutes, LeCadre made written notes of defendant's physical characteristics and clothing which, later that day, he transferred to an undercover worksheet. LeCadre's written description included: black male; five feet, six inches tall; 150 pounds; thin build; brown eyes; short black hair; clean shaven and wearing light colored jeans, a matching jacket and black wool cap. LeCadre testified that throughout his career he had made it a habit of making detailed visual and written observations of suspects in order to facilitate refreshing his recollection at a later date. A body-wire tape recording corroborated LeCadre's testimony he had purchased cocaine from an individual nicknamed Butter. We find the totality of the circumstances supported the finding LeCadre's in-court identification of appellant had an independent basis, separate and distinct from the photo array.

Lastly, appellant argues the court erred by admitting into evidence an electronic diary which was recovered from 434 North Pitt Street and contained defendant's nickname "Butter", his address and his phone number. Appellant contends admission of the diary, which was found at a location other

than 125 West North Street, was a violation of the rule against hearsay. Moreover, appellant argues the Commonwealth was in violation of the rules of discovery by failing to alert the defense to the existence of the diary prior to the eve of trial.

■ Although at the time of the drug purchase in question, the Barneses, suspected drug dealers, resided at the 125 West North Street address appellant had entered while LeCadre and Ewell waited outside, the diary was found during a search of the home the Barnes family occupied sometime thereafter, 434 North Pitt Street. The electronic diary was offered not for the truth of the matter asserted, that is to say appellant's address and phone number, but rather to establish appellant and the Barneses were acquainted, an assertion admitted by appellant. Although the record indicates the appellant failed to preserve the hearsay argument for appeal, the trial court nevertheless addressed the argument and reasoned:

> Regardless of whether this objection was waived, the argument fails on its merits. Hearsay evidence is defined as "in-court evidence of an out-of-court declaration, whether oral or written, which is offered to show the truth of the out-of-court assertion." *Commonwealth v. Lewis*, 424 Pa.Superior Ct. 531, 534, 623 A.2d 355, 357 (1993). In the instant case, the diary was not offered to show the truth of the matter asserted in the out-of-court statement. Instead, it was proferred [sic] to show a general link between defendant and the Barneses.

(Slip Op., Hoffer, J., 3/22/94, pp. 10–11.) We agree there was no violation of the rule against hearsay.

■ Further, we find the Commonwealth did not violate the mandatory discovery rule, Rules Crim.Proc., Rule 305(B)(1)(f), which requires the Commonwealth to provide to the defense "any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]" *Id.* The diary was recovered during a search warrant executed July 11, 1992. The prosecution averred, however, and the court found credible, it was unaware of the diary's existence until the day of trial, November 2, 1993, at which time its existence was

immediately disclosed to the defense. Moreover, regardless of whether the discovery rule arguably had been violated, appellant is not entitled to a new trial as the diary was not exculpatory in nature, nor was appellant prejudiced by the introduction of the diary into evidence.

Having found each of appellant's arguments devoid of merit, we affirm the May 31, 1994 judgment of sentence.

Judgment of sentence affirmed.